**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

LONNY FLAHARTY and
ELIZABETH FLAHARTY,

      Plaintiffs,

v.                                                                    Case No.: 3:09-cv-499-RV-EMT

ALLSTATE INSURANCE COMPANY,
a foreign corporation, and CITIZENS
PROPERTY INSURANCE CORPORATION,
a Florida corporation,

      Defendants.
_____/

**ORDER**

The plaintiffs, Lonny and Elizabeth Flaharty, husband and wife, have brought this breach of contract action against their flood insurer, Allstate Insurance Company, for damage sustained to their residence and property as a result of Hurricane Ivan. This action was filed in state court, after which Allstate removed the case to federal court.[1] The plaintiffs now move to stay these proceedings and compel appraisal with Allstate (doc. 1-1 at pgs 6-8).[2] Allstate opposes this motion.

**I. Background**

Allstate issued the plaintiffs a Standard Flood Insurance Policy ("SFIP"), which coverage is provided by the federal government under the National Flood Insurance

---

[1] The plaintiffs also brought a claim against their wind insurer, Citizens Property Insurance Corporation. I previously granted Citizen's unopposed motion to sever and remand the case to state court with respect to the claim against it, which left Allstate as the only defendant.

[2] This motion was filed in state court along with the plaintiffs' complaint and is included with the removal materials and exhibits.

*Case No.: 3:09-cv-499-RV-EMT*

Program ("NFIP"). In accordance with the terms of the SFIP, the plaintiffs' home was insured for $138,000.00, with a $1,000.00 deductible. The home sustained damage as a result of Hurricane Ivan, which hit the Pensacola area on or about September 15, 2004. After having the plaintiffs' claim adjusted by an independent adjuster, Allstate determined that the total repair cost of the flood-related damage was $97,171.38, and it paid the plaintiffs that amount. Apparently relying on a repair estimate prepared by Leidner Construction Company, the plaintiffs later requested an additional payment for their alleged flood damage. Allstate had the claim assessed by another independent adjuster. The adjuster determined that the Leidner estimate included some non-covered items, including but not limited to property that had been damaged by wind; a deck; and a washer and dryer. The adjuster recommended a supplemental payment for cost to repair flood-related damage in the amount of $11,634.91 --- and Allstate made payment to plaintiffs in that amount --- but the supplemental payment did not include all the compensation that the plaintiffs were seeking. Specifically, it apparently did not include payment for the purported non-covered items listed in the Leidner estimate. This action followed.

## II. Discussion

This case presents a frequent question that arose in the wake of Hurricane Ivan, to wit: what damage is covered by the wind policy, what damage is covered by the flood policy, and what damage, if any, is not covered under either one. The threshold question that I am being called upon to consider right now, however, is narrower than that. Specifically, I must decide whether the plaintiffs can compel appraisal under the flood policy at issue.

As noted, the flood policy is a SFIP issued to the plaintiffs through the NFIP. The NFIP was established by Congress, through the National Flood Insurance Act, in order to make "flood insurance coverage available on reasonable terms and conditions to persons who have need for such protection." *See* 42 U.S.C. § 4001(a). The Director of FEMA manages the program, controlling the payment or disallowance of all flood insurance claims. Claims are paid out of a National Flood Insurance Fund in the United States Treasury. *See* 42 U.S.C. § 4017(a).

By statute and regulation, private insurers (such as Allstate) may offer a SFIP under a "Write-Your-Own" ("WYO") program. *See* 42 U.S.C. § 4051; 44 C.F.R. § 61.13(f). However, all terms and conditions of a SFIP are mandated and controlled by the Act and federal regulations [codified at 44 C.F.R. Pt. 61, App. A.] In accordance with federal regulatory law, a private insurer issuing a SFIP may not alter, amend, or waive any provision of the SFIP, absent express written consent from the Federal Insurance Administrator. *See* 44 C.F.R. Pt. 61, App A(1), Art.9(D); 44 C.F.R. Pt. § 62.23(c), (h)(6). WYO insurers are considered "fiscal agents" of the United States [42 U.S.C. § 4071(a)(1)], and they must remit all insurance premiums to the Federal Insurance Administrator, excluding funds required to meet current expenditures. *See* 44 C.F.R. Pt. 62, app. A, art. VII(B).

As a general rule, SFIPs should be interpreted in a fashion that ensures uniform interpretation throughout the country, avoiding state-to-state coverage variances. *See Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program*, 129 F.3d 581, 584 (11th Cir. 1997); *accord Suopys v. Omaha Property & Casualty,* 404 F.3d 805, 809 (3d Cir. 2005). Moreover, under the Appropriations Clause of the United States Constitution, entitlement to payment under a SFIP must derive from a federal statute. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 424, 110 S. Ct. 2465, 110 L. Ed. 2d 387 (1990). Thus, it is well established that SFIP contracts are interpreted using federal statutory and common law rather than state law, and states have no regulatory control over the NFIP. *See, e.g., Newton v. Capital Assurance Co., Inc.*, 245 F.3d 1306, 1309 (11th Cir. 2001) (citing *Carneiro Da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program, supra*, 129 F.3d at 584).

In *Linder & Assoc, Inc. v. Aetna Cas. & Sur. Co*, 166 F.3d 547 (3d Cir. 1999), the Third Circuit held:

> "(N)either the statutory nor decisional law of any particular state is applicable to the case at bar . . . [W]e interpret the SFIP in accordance with its plain, unambiguous meaning, remaining cognizant that its interpretation should be 'uniform throughout the country' and that 'coverage should not vary from state to state.'" *Id.* at 550 (citing *Carneiro Da Cunha, supra*, 129 F.3d at 585).

*Case No.: 3:09-cv-499-RV-EMT*

With the foregoing in mind, I now turn to the language of the policy at issue. Article VII of the SFIP provides, in relevant part:

> P. Appraisal
>
> If you and we fail to agree <u>*on the actual cash value or, if applicable, replacement cost of your damaged property to settle upon the amount of loss*</u>, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the covered property is located. The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss, or if it applies, the replacement cost and loss.

As the emphasized language above indicates, the SFIP provides that appraisal is an option only when and if the parties fail to agree on the "actual cash value" or "replacement cost" of the damaged property --- not when the parties disagree on the threshold issues of coverage and causation. A sister Florida District Court considered this issue (and interpreted the appraisal provision) in *De la Cruz v. Bankers Ins. Co.,* 237 F. Supp. 2d 1370 (S.D. Fla. 2002). I agree with the district court's analysis, and I will quote from its decision at length:

> The appraisal clause can only be invoked when the parties cannot agree as to the actual cash value, or, as defined by the policy, the parties cannot agree as to the replacement cost of an insured item of property. This language cannot be stretched to mean that appraisal can be invoked whenever the parties dispute which items of property were damaged or whether those items were in fact damaged by flood waters. That type of dispute is a dispute over coverage, and under the terms of the SFIP such a dispute can only be resolved by a federal district court.
>
> * * *
>
> The reading of the appraisal clause urged by [plaintiff] would effectively mean

> that appraisal could be invoked by any party as to any dispute or controversy whatsoever and would leave the limiting language in the clause --- "actual cash value" or "replacement cost of an insured item of property" --- without any effect.
>
> * * *
>
> The better reading of the appraisal clause is that appraisal can be invoked only where the parties agree about what items are covered by the policy (what the covered loss is) but differ on the value or cost of these items. To use an example, assume that an SFIP covers a 3-story home. After a flood, the insurer finds --- contrary to what the insured asserts --- that there was damage to the structure and to items on the fist floor of the home, but that there was no damage whatsoever caused by the flood to the second or third floors. If [plaintiff] is correct, then the insured could invoke the appraisal clause to resolve the dispute concerning the issue of causation *vel non* as to the second and third floors. I simply do not believe that the appraisal clause can be read so broadly given the strict construction principle applicable to flood policies like the one here and the exclusive jurisdiction vested in district courts to resolve claim denials --- whether complete or partial.

*Id.* at 1374-76. *Cf. Wausau Ins. Co. v. Herbert Halperin Distribution Corp.,* 664 F. Supp. 987 (D. Md. 1987) (coverage is generally an issue of "contract interpretation which is within the competence of the Court, not an appraiser to resolve"); *Kawa v. Nationwide Mut. Fire. Ins. Co.,* 664 N.Y.S.2d 430 (N.Y. 1997) (holding that similar appraisal clause "only applies to a case with a disagreement 'as to the amount of damage,' and not where the insurer denies liability"); *Hawkinson Tread Tire Serv. Co. v. Indiana Lumbermens Mut. Ins. Co. of Indianapolis, Ind.,* 245 S.W.2d 24 (Mo. 1952) (noting that "the resulting difference of views as to the amount of the loss was incidental to the actual (legal) controversy between the parties as to the meaning of the insurance contract and its applications to the facts").

Because it appears undisputed that this case involves the threshold question of whether the property for which supplemental payment was denied was damaged by wind, flood, or was covered at all --- and not whether the amount Allstate paid out adequately represented the "actual case value" or "replacement cost" of the damaged property ---

appraisal is simply not available under Article VII(P).[3]

## III. Conclusion

As stated above, the plaintiffs' motion to stay and compel appraisal (doc. 1-1 at pgs 6-8) must be, and is, hereby DENIED.

DONE and ORDERED this 11th day of January, 2010.

*/s/ Roger Vinson*
ROGER VINSON
Senior United States District Judge

---

[3] Because I find that the appraisal clause is not implicated on the facts presented here, I need not, and will not, reach Allstate's alternative argument that the plaintiffs are not entitled to the appraisal because they failed to file a timely proof of loss prior to bringing suit.

*Case No.: 3:09-cv-499-RV-EMT*